# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKIE EVANAUSKI,

    Plaintiff,

v.

LINDA AERTS,
Supervisor of Cedar Creek Township,
in her official and individual capacities,
STEPHANIE KUZIAK,
Clerk of Cedar Creek Township,
in her official and individual capacities,
and CEDAR CREEK TOWNSHIP,

    Defendants.

_____/

File No. 1:20-CV-00947

Hon. Janet T. Neff

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### COMPLAINT

Plaintiff, Jackie Evanauski, by her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, represents:

### INTRODUCTION

This is an action requesting the Court to remedy Defendants' violations of Plaintiff's rights under the First Amendment of the Constitution, pursuant to 42 U.S.C. § 1983, as well as Defendants' violations of Plaintiff's rights under the

1

Michigan Bullard-Plawecki Right to Know Act, Act 397 of 1978, Mich. Comp. Laws § 432.501 *et seq.*

## JURISDICTION, VENUE, AND PARTIES

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Plaintiff resides in Cedar Creek Township in Muskegon County, Michigan, in the Western District of Michigan, Southern Division.

3. Defendant Linda Aerts is the Supervisor of the Cedar Creek Township ("the Township") and is a resident of the Township. The Township Board appointed Defendant Aerts to the position after the resignation of the elected Supervisor, Krystal Smith, in the middle of the term of office.

4. Defendant Stephanie Kuziak is the elected Clerk of the Township and a resident of the Township.

5. Defendant Cedar Creek Township is a local unit of government organized under Michigan law and located within the boundaries of Muskegon County, Michigan. The Township is governed by a five-person board, consisting of two Trustees, the Supervisor, the Treasurer, and the Clerk. The Township is a small, rural, approximately-3,100-person township located in the northeast part of Muskegon County.

6. Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

2

## Factual Allegations

7.  Defendants employed Plaintiff as the Deputy Clerk/Office Manager of the Township until August 12, 2020, when Defendant Kuziak terminated Plaintiff's employment on behalf of herself as the Clerk and on behalf of the Township. Plaintiff held that position for four and a half years. One of Plaintiff's job duties was to be chair of the Township elections and run those elections.

8.  In January 2019, the then-Township Supervisor, Krystal Smith, pleaded guilty to a criminal charge of misdemeanor animal cruelty, for starving horses in her care nearly to death. Ms. Smith resigned thereafter as the Township Supervisor, and the Board later appointed Defendant Aerts to serve the remainder of Ms. Smith's term as Supervisor.

9.  Prior to Ms. Smith's sentencing in her criminal case, Plaintiff sent a letter to the sentencing judge to refute Ms. Smith's claims of depression based on Plaintiff's observations of Ms. Smith from when they worked together. Plaintiff also wrote to the sentencing judge to express her opinion that, given the nature and cruelty of the crime, Ms. Smith should receive some period of incarceration as a sentence.

10. After Defendant Aerts was appointed Supervisor, she made it clear that she was upset with Plaintiff because Plaintiff sent a sentencing letter to the judge about Ms. Smith urging some jail time. Defendant Aerts held personal and political opinions in opposition to incarceration. In addition to being supervised by

3

Defendant Kuziak, Defendant Aerts also began to act with actual and/or apparent supervisory authority over Plaintiff as to all or part of her job duties after Aerts' appointment.

11. Defendant Aerts frequently expressed various political differences with Plaintiff, in addition to her disagreement with Plaintiff over Plaintiff sending the sentencing letter urging incarceration for Ms. Smith. Defendant Aerts made the working environment difficult, hostile and untenable for Plaintiff because their political opinions clashed – on issues largely having nothing to do with the operations of a local township. Plaintiff's support of Donald Trump as the U.S. President differed from the political views of Defendants Aerts and Kuziak, who opposed Mr. Trump as the President. Defendant Kuziak began to act in the same manner toward Plaintiff as Defendant Aerts did, particularly after the state court sentenced Ms. Smith to a period of incarceration and Plaintiff had written a letter to the court on this topic, as did many other individuals from the community.

12. On or about February 5, 2020, Defendant Aerts gave Plaintiff a negative employment review for 2019 which contained untrue complaints about Plaintiff's job performance. Defendant Aerts did so in retaliation for a variety of issues unrelated to Plaintiff's job performance, including Plaintiff's authorship of the letter to Ms. Smith's sentencing judge and Plaintiff's political differences with Defendant Aerts.

13.     Neither Defendant Kuziak nor anyone representing the Township had ever given Plaintiff a negative job performance review before. Board members, including Clerk Kuziak, had always approved of Plaintiff's job performance prior to Defendant Aerts' negative employment review.

14.     Until June 2020, Plaintiff officially, at least, reported directly to Defendant Kuziak. In or around February 2020, Defendant Kuziak and/or Defendant Aerts recommended a revised employee handbook to the Township Board, stating that employees would now be considered "at-will," and therefore not entitled to due process prior to termination, and changing Plaintiff's official supervisor to be Supervisor Aerts, not Clerk Kuziak. Prior to this amendment, Plaintiff's employment would have been subject to a "just cause" review, and she was entitled to a due process hearing prior to termination. Upon information and belief, these changes were motivated by a desire to terminate Plaintiff's employment without the need to provide her with due process to challenge the sham case against her. Upon information and belief, Defendants Kuziak and Aerts represented to the Board that these handbook changes were recommended by the Township's attorney as if they were neutral changes, and it was on that basis that other Board members voted to approve the changes. Defendants Kuziak and Aerts did not inform other Board members that the changes were intended to put them in a better position to build a sham case for lawful reasons to terminate Plaintiff without Plaintiff's entitlement to a due process hearing.

15. On or about July 12, 2020, Plaintiff advised Defendant Kuziak that she was going to run for Township Supervisor against Defendant Aerts in the 2020 election, which would be the first election in which Defendant Aerts, who had been appointed to the position, would face the voters. Defendant Aerts planned to run for the position as a Democrat. Plaintiff further told Defendant Kuziak, who is also a Democrat, that she would run on the ballot as an Independent against Defendant Aerts.

16. Because Plaintiff was not running as a Democrat or a Republican, she did not have to run in the primary election held in August 2020. Instead, Plaintiff will appear on the November 2020 general election ballot listed as an Independent, against Defendant Aerts, running as a Democrat.

17. Defendant Kuziak and Defendant Aerts made Plaintiff's working environment ever more increasingly hostile and intolerable after they learned of Plaintiff's decision to run against Supervisor Aerts.

18. Upon information and belief, Defendants Kuziak and Aerts were also reporting falsehoods to others who work in the Township office about Plaintiff, which caused some of them, but not all, to doubt Plaintiff's competence. In July 2020, a Township resident called Plaintiff to privately report to Plaintiff that she "needed to watch her back" and that another Township employee told the resident that the Township was "looking for reasons to fire" Plaintiff and that the resident had been told that Plaintiff was "sneaky and vindictive." Upon information and

belief, Defendants Aerts and Kuziak were reporting falsehoods about Plaintiff's work performance and general character to other employees, hoping to sway their opinions and those of others in the community about Plaintiff and her candidacy against Defendant Aerts.

19. Defendants Aerts and Kuziak began taking actions to make it difficult or impossible for Plaintiff to complete certain parts of her job. More than once, Plaintiff learned that one or both of Kuziak and Aerts withheld important information from Plaintiff necessary for her to complete job tasks. On one occasion, Plaintiff tried to log in to her computer, and could not do so because her password did not work. When Plaintiff told Defendant Aerts of the difficulty she was having, and told Defendant Aerts that she planned to call the IT department to help her, Defendant Aerts admitted that she had changed Plaintiff's password and angrily told her that she was not authorized to call IT directly and that she must always go through Aerts, even though that was never a rule before. Defendant Aerts and Kuziak also changed an internet access password and building alarm codes without telling Plaintiff, to frustrate her access to do her work.

20. Upon information and belief, Township employees are afraid of retaliation by Defendant Kuziak and Defendant Aerts if they publicly support Plaintiff.

21. Plaintiff, as the election chair, had almost exclusive responsibility for running the Township elections. During Plaintiff's tenure, Clerk Kuziak had almost

7

no direct involvement in the preparation to hold elections, nor in most of the work of running Township elections.

22. Very shortly prior to the August 2020 primary election, on or about July 27, 2020, Defendant Kuziak told Plaintiff that she had spoken to Muskegon County Clerk Nancy Waters, and that Clerk Waters told Defendant Kuziak that Plaintiff could not chair the August 2020 election. On that basis, Defendant Kuziak forced Plaintiff to step down as chair and be dramatically less involved than normal in running the August 2020 primary. Plaintiff later learned that Defendant Kuziak told Clerk Waters that Plaintiff was campaigning for Supervisor on work time, which Plaintiff was not. Plaintiff also later learned that Clerk Waters had not told Defendant Kuziak that Plaintiff could not chair the primary election but left the decision to Defendant Kuziak.

23. As part of announcing that she was curtailing Plaintiff's duties as to the August 2020 primary election, Defendant Kuziak wrote Plaintiff up in a discipline notice for allegedly campaigning for office on Township time, which she was not doing. As part of the write-up, Defendant Kuziak reiterated that she was removing Plaintiff from her responsibilities for assisting with the August primary election. Defendant Kuziak told Plaintiff that she needed to sign the write-up indicating she had no questions about it, which Plaintiff did, both because she had no questions about the accusation and because she was concerned about refusing a

directive of Kuziak's and further making an already hostile working environment even worse.

24. Defendant Kuziak, who had not been directly involved in the running of elections and had little idea how or what she was supposed to do, repeatedly came to Plaintiff for help to prepare for the August 2020 primary, although she had stripped Plaintiff of such responsibilities. Defendant Kuziak at one point sent Plaintiff a text asking her for a "cheat sheet" on how to run the election. Defendant Kuziak also sent texts to other people saying that Plaintiff "had screwed" Defendant Kuziak in the running of the August 2020 primary.

25. Around late July, Defendants Kuziak told Plaintiff that she was consulting with a lawyer to be sure she "got it right" when she removed Plaintiff from responsibilities for chairing the August primary election. This was a similar statement to something that Defendant Aerts told Plaintiff in February 2020 when she had given Plaintiff a negative performance review, that she had talked with the Township attorney because "this is serious" for Plaintiff, without providing further explanation about what that meant. Upon information and belief, Defendants intended to attempt to intimidate and harass Plaintiff by making her feel under constant threat of employment termination when they made these statements, since there would be no other rational reason to reveal to an employee in this manner that they were seeking legal advice.

26. On August 11, 2020, Plaintiff delivered a written letter to two other Board members, Trustee Bob Wright and Trustee Kim Young, when the Township Board was having a public meeting. In that letter, Plaintiff described the hostile working environment to which she was being subjected.

27. On August 12, 2020, Defendant Kuziak was waiting for Plaintiff with the Township's attorney when Plaintiff arrived at work, and the Township's attorney handed a letter to Plaintiff telling her she was fired. In that letter, Defendant Kuziak claims that Plaintiff was fired based on her 2019 performance review, her "response to that review," and her performance in assisting with the August 2020 primary election. Defendant Kuziak claimed in the letter that additional personnel hours were necessary to fix Plaintiff's alleged mistakes, which is untrue.

28. Following Defendant Kuziak's termination of Plaintiff, Kuziak told a Board Trustee that she had fired Plaintiff and that the Township was "covered," meaning that Defendant Kuziak had done so with the Township attorney and that Defendant Kuziak could say the firing was based on Plaintiff's alleged job performance.

29. Upon information and belief, Defendant Aerts also participated in the decision to terminate Plaintiff's employment. The remainder of the Township Board was not consulted prior to Defendant Kuziak terminating Plaintiff's employment.

30. When Defendant Kuziak terminated Plaintiff, she was also acting on behalf of Defendant Township and terminated her employment both as Deputy Clerk and as Office Manager for the Township.

31. Even after she terminated Plaintiff, Defendant Kuziak's retaliation against Plaintiff continued, as she continued to share and/or infer false and negative allegations about Plaintiff with residents of the Township in an attempt to discredit Plaintiff and thwart Plaintiff's candidacy for Township Supervisor.

32. For instance, upon information and belief, Defendant Kuziak deliberately and overtly informed residents of the Township about Plaintiff's termination, meanwhile implying the termination had been for nefarious reasons but refusing to actually comment on the alleged justification.

33. Instead of keeping information about Plaintiff's termination confidential or even professional, upon information and belief, Defendant Kuziak deliberately and overtly encouraged residents aligned with her to submit a Freedom of Information Act ("FOIA") request for Plaintiff's employee file, knowing that she and Defendant Aerts had previously padded it with unfair and inaccurate statements about Plaintiff, both in her discharge paperwork and in her previous performance review.

34. As a result, one resident submitted the FOIA request, as encouraged by Defendant Kuziak. This resident who requested Plaintiff's employee file is, upon information and belief, Tom Smith – the husband of Krystal Smith, the former

Township Supervisor about whom the Plaintiff wrote the letter regarding her beliefs about Ms. Smith's criminal case sentencing.

35. Defendant Kuziak provided these documents to Mr. Smith ostensibly pursuant to FOIA, despite the fact that Mr. Smith had not signed the request as required by FOIA, and despite the fact that Defendant Kuziak failed to comply with the requirements of the Michigan Bullard-Plawecki Employee Right to Know Act ("ERKA"), which required her to at least notify Plaintiff prior to releasing the negative information contained in Plaintiff's employee file.

36. Upon information and belief, Mr. Smith received Plaintiff's employee file unbeknownst to Plaintiff and proceeded to make copies of the negative documents with it. Then, at the following Township Board meeting, he stood at the door and passed out the selected, negative documents from Plaintiff's employee file, in an attempt to not only embarrass Plaintiff but to ambush her with unfairly discrediting information and to attempt to prevent her from winning the Township Supervisor election.

37. In the November 2020 general election, Plaintiff lost the Supervisor election to Defendant Aerts by only 72 votes out of 1,036 cast.

38. In the absence of Defendants' unlawful actions, Plaintiff would have prevailed in the November 2020 general election for Supervisor.

**<u>Count I – First Amendment Retaliation – Violation of Freedom of Speech under the First Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 as to all Defendants</u>**

39. Plaintiff relies on the allegations of all prior paragraphs as if restated herein.

40. Plaintiff engaged in protected conduct when she sent a letter to the sentencing judge about Krystal Smith, expressing Plaintiff's opinion opposing Ms. Smith's mitigation argument that she was suffering from depression, and expressing Plaintiff's opinion that a sentence of some period of incarceration was appropriate. Plaintiff's official duties did not include supervising then-Supervisor Smith's conduct. When she spoke on this important topic, therefore, she was speaking as a citizen on a matter of public concern.

41. Defendant Aerts retaliated against Plaintiff because Plaintiff sent the sentencing letter and spoke on a matter of public concern. Defendant Aerts, who acted as a supervisor in Plaintiff's employment, retaliated by delivering a negative, untrue performance review of Plaintiff, by creating a hostile and untenable working environment, and by engaging in various activities designed to make it more difficult or impossible for Plaintiff to do her work. Defendant Aerts also retaliated against Plaintiff by recommending her employment termination for allegedly poor work performance and based on the retaliatory job performance review, which were both sham, untrue bases for the firing proffered to attempt to avoid legal liability and to defame Plaintiff.

42. Plaintiff's termination of employment would clearly deter a person of ordinary firmness from continuing to engage in the conduct of making protected speech.

43. Defendants terminated Plaintiff's employment at least in part because of Plaintiff's exercise of protected speech.

44. Defendants violated the First Amendment when Defendants discharged Plaintiff as aforesaid in retaliation for her protected speech.

45. As a result of Defendants' violation of Plaintiff's First Amendment right to freedom of speech, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits; compensatory damages for emotional and mental distress; attorney's fees and interest; punitive damages; and all other necessary and appropriate relief.

WHEREFORE, Plaintiff requests that the Court grant her relief in an amount as determined by a jury, plus interest and costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

### Count II – First Amendment Retaliation – Political Affiliation Discrimination – Violation of First Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 as to all Defendants

46. Plaintiff relies on the allegations of all prior paragraphs as if restated herein.

47. Defendant Aerts expressed various political differences with Plaintiff on multiple topics, and Defendant Aerts retaliated against Plaintiff at work based

14

in part because of those political disagreements. Defendant Aerts' retaliation included acts described in prior paragraphs and culminated in Defendants' termination of Plaintiff's employment on August 12, 2020.

48. Defendants Aerts became additionally upset with Plaintiff when Plaintiff announced she would run against Defendant Aerts in the Supervisor election in November 2020, and Defendant Aerts retaliated against Plaintiff at work based in part because of Plaintiff's declaration that she would run for election against Aerts. Defendant Aerts' retaliation included acts described in prior paragraphs and culminated in Defendants' termination of Plaintiff's employment on August 12, 2020.

49. Defendant Kuziak, who shares all or most of Defendant Aerts' political beliefs and is a member of the same political party, participated in the retaliation against Plaintiff, as described in prior paragraphs. At least in part, Defendant Kuziak was motivated to engage in retaliation, culminating in Defendants' termination of Plaintiff's employment, because Plaintiff filed to run against Defendant Aerts.

50. When Defendant Kuziak terminated Plaintiff's employment, she did so on her own behalf as the Clerk and on behalf of the Defendant Township.

51. Defendants terminated Plaintiff's employment at least in part because of Plaintiff's exercise of both protected speech and political beliefs, and/or because of Plaintiff's exercise of her right to run for public office against Defendant Aerts.

15

52. Defendants violated the First Amendment when they discharged Plaintiff as aforesaid in retaliation for her protected speech and political beliefs, and for her protected political activity of filing to run for elected office.

53. As a result of Defendants Aerts' and Kuziak's violations of Plaintiff's First Amendment rights, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits; compensatory damages for emotional and mental distress; attorney's fees and interest; punitive damages; and all other necessary and appropriate relief.

WHEREFORE, Plaintiff requests that the Court grant her relief in an amount as determined by a jury, plus interest and costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

**Count III –Violation of the Michigan Bullard-Plawecki Right to Know Act, pursuant to Mich. Comp. Laws § 423.501 *et seq.*, as to Defendants Kuziak and Township**

54. Plaintiff relies on the allegations of all prior paragraphs as if restated herein.

55. Defendant Kuziak, in her capacity as Clerk for Defendant Township, deliberately and overtly encouraged Township residents to request copies of Plaintiff's personnel file under the Freedom of Information Act ("FOIA"), as a backdoor attempt to further unfairly discredit Plaintiff and hurt her chances of winning the election for Township Supervisor.

56. When Mr. Smith submitted the FOIA request, as prompted by Defendant Kuziak, Kuziak provided Plaintiff's personnel file, which included disciplinary actions, without prior written notice to Plaintiff as required by Sec. 6 of ERKA.

57. As a result of Defendants Kuziak's and Township's violations of Plaintiff's rights under ERKA, Defendants are liable to Plaintiff for damages, including costs and attorney's fees, and all other necessary and appropriate relief.

WHEREFORE, Plaintiff requests that the Court grant her relief in an amount as determined by a jury, plus interest and costs, including reasonable attorney's fees, pursuant to Mich. Comp. Laws § 423.511.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff Jackie Evanauski

Dated: January 29, 2021   By: /s/ Sarah R. Howard
Sarah Riley Howard
Business Address:
146 Monroe Center, N.W., Suite 805
Grand Rapids, MI 49503
(616) 451-8496
showard@psfklaw.com

## JURY DEMAND

To the extent jury trial is allowed with regard to any of the issues as set forth above, Plaintiff demands the same.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff

Dated: January 28, 2021   By: /s/ Sarah R. Howard
                             Sarah Riley Howard
                             Business Address:
                             146 Monroe Center, N.W., Suite 805
                             Grand Rapids, MI 49503
                             (616) 451-8496
                             showard@psfklaw.com